# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**SAMUEL M. ROTTER,**

       **Plaintiff,**

        **v.**

**VISION & BEYOND GROUP LLC,**
**et al.,**

       **Defendants.**

**Case No. 1:25-cv-548**

**JUDGE DOUGLAS R. COLE**

## <u>OPINION AND ORDER</u>

This case involves an employment dispute, or maybe more accurately a non-employment dispute. Plaintiff Samuel M. Rotter alleges that Vision & Beyond Group LLC (V&B) hired him but then reneged on his employment contract three days before his start date. (Compl., Doc. 1, #2). The other Defendants are the individuals with whom Rotter dealt during the hiring process. (*Id.* at #5). V&B and its alleged co-founders, Defendants Stanislav Grinberg and Peter Gizunterman, failed to respond to this suit. But the other individual Defendants (movant-Defendants) have each moved to dismiss. (Docs. 7, 8, 40). For the reasons below, the Court **GRANTS** those motions, (Docs. 7, 8, 40), and **DISMISSES** Donald Feathers, Cheryl Walters, and David Mizrachi as Defendants.

## BACKGROUND[1]

Rotter was first contacted about potential employment with V&B in May 2021. (Doc. 1, #7). At the time, he worked at MMS Group, a company providing property management and related services. (*Id.*). Working there for the past fourteen years, Rotter had served both as MMS Group's Chief Operating Officer and its Chief Financial Officer, managing a residential real estate portfolio worth billions of dollars. (*Id.*). Rotter was not seeking to leave MMS Group, as he was highly compensated in his roles. (*Id.*). Indeed, he earned approximately two million dollars over the previous five years, plus an equity stake. (*Id.*). However, when a recruiting firm contacted Rotter about an open position with V&B, the company promised a substantial raise—so he listened. (*Id.* at #8).

"Over the next several months, Rotter regularly communicated with V&B and its agents numerous times, including during a full day of in-person interviews in Cincinnati, Ohio on June 21, 2021." (*Id.*). There, Rotter met with Defendants Grinberg, Gizunterman, Feathers, and Mizrachi. (*Id.*). During that meeting, he questioned them as to whether V&B had sufficient funding to afford the compensation it was offering. (*Id.*). According to Rotter, Defendants Grinberg and Mizrachi assured Rotter that V&B could afford Rotter's compensation. (*Id.*). Indeed, they stated that the company had sixty million dollars in available funds. (*Id.*).

---

[1] Because this matter is before the Court on Defendants' motions to dismiss, the Court must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). So while the Court relies on the Complaint's allegations to recount the case's background, it reminds the reader that they are just that— allegations.

2

Defendant Feathers participated in those discussions and did not correct that representation. (*Id.* at #9).

V&B offered Rotter a job two weeks later. (*Id.*). After some negotiation, the parties agreed on compensation. (*Id.*). But Rotter communicated to V&B that he would not give notice to MMS Group until he had a signed employment agreement. (*Id.*). On that score, the parties traded drafts from July through September. (*Id.*). They ultimately executed the final agreement on September 22, 2021. (*Id.* at #9–10). V&B confirmed Rotter's start date as November 1, 2021, and he began making preparations for the new role. (*Id.* at #10–11). As part of his onboarding, he prepared to work in Cincinnati for his first ninety days of employment. (*Id.*). When he discussed those travel arrangements with Defendant Walters, she "responded to this news with enthusiastic approval." (*Id.* at #11).

But things took a turn on October 27, 2021. (*Id.*). Defendant Grinberg called Rotter and stated that "V&B would not go through with Rotter's impending employment because V&B was in financial trouble." (*Id.*). During that call, Grinberg shared that "V&B knew about the financial trouble in August 2021 but had been trying to 'work it out' and were continuing to do so." (*Id.*). Despite this being the first Rotter heard of any financial troubles, he "offered to defer his salary until V&B was able to resolve its financial problems, which Grinberg indicated should occur in February or March 2022." (*Id.* at #12). V&B never responded to that proposal; instead it offered Rotter $25,000 in exchange for a full release, an offer that Rotter declined. (*Id.*). Finally, Grinberg emailed Rotter a notice of termination on December 16, 2021.

(*Id.*). As a result, Rotter was unemployed and without income for a full year, from October 22, 2021, through October 30, 2022. (*Id.* at #14). During that time, he lost over $400,000 in compensation that he would have received from his previous employer. (*Id.*).

Under the terms of his employment agreement, Rotter initiated arbitration proceedings on April 11, 2022, against V&B.[2] (*Id.*). On March 20, 2024, the arbitrator awarded Rotter a total of $560,547.84, finding that V&B had violated the Pennsylvania Wage Payment and Collection Law ("WPCL"). (*Id.* at #15). To this day, V&B has refused to pay. (*Id.*). While Rotter continues to "pursue collection of the Arbitration award," he "files this action in the meantime to pursue wage payment from V&B officers and agents," as well as further damages. (*Id.*). So, he brings a claim for (1) a violation of the WPCL against all individual Defendants, and (2) a claim for fraudulent or negligent misrepresentation and concealment against all Defendants except Cheryl Walters. (*Id.* at #15–22).

Since he filed his Complaint, this matter has taken some further twists and turns. Rotter first sued in his home district, the Eastern District of Pennsylvania. (Doc. 1). He initially served only Defendants Walters and Feathers, (Docs. 4, 5), who each separately moved to dismiss, (Docs. 7, 8). Among other things, they argued that jurisdiction and venue did not lie in the Eastern District of Pennsylvania. (Doc. 7,

---

[2] While Rotter initially named all of the individual Defendants in the Arbitration, he "agreed to dismiss them without prejudice pursuant to [a] Litigation Agreement, which include[d] a tolling agreement covering the claims asserted herein that d[id] not begin to run until an award in Arbitration [wa]s collected." (Doc. 1, #14–15).

4

#44; Doc. 8, #103 (incorporating Feathers' jurisdiction and venue arguments)). While those motions were pending, Rotter also managed to serve Mizrachi. (Doc. 19). He did so on July 30, 2025—over five months after the suit began. (*Id.*). But the same week he accomplished service, the assigned judge responded to Feathers and Walters' motions by transferring the suit to this Court. (Doc. 20). In doing so, though, the judge did not rule on the rest of their motions to dismiss. (*Id.*). Then, when Mizrachi failed to appear in this Court, Rotter applied for default against him, which the Clerk entered five days later. (Docs. 22, 24). Ten days after that, Mizrachi appeared and moved the Court to set aside the default (and any resulting judgment) against him, (Doc. 25), which the Court granted, (Doc. 36).[3] Mizrachi subsequently filed his own Motion to Dismiss (Doc. 40). That motion is now also ripe, so the Court addresses all three pending motions to dismiss, (Docs. 7, 8, 40).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[3] Rotter also moved the Court for "leave to file under seal portions of certain documents to be cited in [his] motion for default judgement against Defendant David Mizrachi." (Doc. 30, #78). Because the Court set aside that default, (*see* Order, Doc. 36), and is now dismissing Mizrachi as a defendant, the Court also denies Rotter's motion as moot.

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett*, 528 F.3d at 430.

A court analyzing a motion to dismiss under Rule 12(b)(6) generally must confine its review to the pleadings. *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). That said, the Sixth Circuit has "taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Id.* at 344.

Typically, at the motion-to-dismiss stage, a plaintiff need only plead sufficient facts to create a plausible inference it can eventually prove all the required elements. *See* Fed R. Civ. P. 8(a). But when a plaintiff's claim sounds in fraud, the plaintiff must also satisfy Federal Rule of Civil Procedure 9(b) to survive a motion to dismiss. Rule 9(b) requires that, "in any complaint averring fraud or mistake, 'the circumstances constituting fraud or mistake shall be stated with particularity.'" *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quoting Fed. R. Civ. P. 9(b)).[4] The requirement "reflects the rulemakers' additional understanding that, in cases

---

[4] The Court notes that the text of Rule 9 was altered in the 2007 amendments to the Federal Rules of Civil Procedure. *Contrast Yuhasz*, 341 F.3d at 563 (quoting the then-current version of Rule 9(b) as requiring that "the circumstances constituting fraud or mistake shall be stated with particularity"), *with* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). As the committee note provides, however, these "changes are intended to be stylistic only." Fed. R. Civ. P. 9 advisory committee's note to 2007 amendment. Thus, although the text that *Yuhasz* quotes is no longer operative, the content of the norm that the text expresses still controls the analysis here.

involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading." *In re EveryWare Glob., Inc. Secs. Litig.*, 175 F. Supp. 3d 837, 849 (S.D. Ohio 2016) (quoting *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)).

## LAW AND ANALYSIS

Rotter presses two claims against the movant-Defendants. The first is a claim under the Pennsylvania Wage Payment and Collection Law (WPCL). (Doc. 1, #15–20). The second is a combined fraud/negligent misrepresentation/concealment claim. (*Id.* at #20–23). The Court discusses them in that order, but concludes he adequately pleads neither.

## A. Rotter Fails to Plead that Any of the Three Movant-Defendants Played an Active Role in Withholding his Wages.

"The WPCL was enacted to provide employees a means of enforcing payment of wages and compensation withheld by an employer." *Ely v. Susquehanna Aquacultures, Inc.*, 130 A.3d 6, 13 (Pa. Super. Ct. 2015) (quoting *Voracek v. Crown Castle USA Inc.*, 907 A.2d 1105, 1109 (Pa. Super. Ct. 2006)). But "[t]o hold an 'agent or officer' personally liable for unpaid wages, 'evidence of an active role in decision making is required.'" *Int'l Ass'n of Theatrical Stage Emps., Loc. Union No. 3 v. Mid-Atl. Promotions, Inc.*, 856 A.2d 102, 105 (Pa. Super. Ct. 2004) (quoting *Mohney v. McClure,* 568 A.2d 682, 686 (Pa. Super. Ct. 1990), *affirmed*, 604 A.2d 1021 (Pa. 1992)). And "Defendants [d]o not incur liability merely by sitting on [a] Board of Directors or … Compensation Committee"; they must be "active decision-makers in causing [V&B] to deny" Rotter's wages. *Molinaro v. Akrion, Inc.*, No. 2009-C-0230, 2010 Pa.

7

Dist. & Cnty. Dec. LEXIS 335, at *22 (Pa. Com. Pl. (Lehigh Cnty.) Oct. 6, 2010). So, for Rotter to state a claim under the WPCL against the individual Defendants, he "ha[s] to show [that they were] actively involved in corporate policy-making, such as corporate decision-making or corporate advisement on matters of pay or compensation." *Loc. Union No. 3*, 856 A.2d at 106. Or at least, here at the pleading stage, Rotter must provide factual allegations giving rise to a reasonable inference that was the case.

Rotter falls short. He fails to plausibly allege that any of the three movant-Defendants played an active role in denying him his wages, or even that they were involved in decision-making at V&B in a general sense. Sure, he alleges that Defendants Feathers and Mizrachi were members of the board[5] and participated in Rotter's June interview. (Doc. 1, #5, 8–9). But that only supports an inference that they played some role in *hiring* him, not that they played a role in terminating his employment. The claim is even weaker as to Defendant Walters. True, she was Vice President of Human Resources, but Rotter alleges exactly one interaction with her—discussing his travel arrangements regarding his start date. (*Id.* at #10–11). And despite Rotter's wishes, the Court cannot infer liability based on her title as "the top

---

[5] Feather's Motion to Dismiss contests that he was a "board member, officer or agent," instead claiming that he was simply an independent contractor hired by V&B for advisory duties. (Doc. 7-2, #64–65; Consulting Agreement, Doc. 7-5, #96–98). Rotter, in his response, points to these listed duties as evidence of Feather's active role. (Doc. 9, #122–23). Similarly, Mizrachi's Motion to Dismiss cited and attached his agreement with V&B. (Doc. 40-1, #389; Advisory Board Agreement, Doc. 40-4, #417–20). And Rotter's response discussed that agreement, as well as additional testimony from the arbitration proceedings. (Doc. 45, #450–53). Because this matter is at the motion to dismiss stage, the Court confines its analysis to the facts alleged in the Complaint.

human resources executive" and no other pled facts. (Plf.'s Resp., Doc. 12, #217). So, Rotter's WPCL claim is dismissed as to all three movant-Defendants.

**B.    Rotter Fails to Plausibly Allege that Defendants Donald Feathers or David Mizrachi Made a False Misrepresentation or Omission.**

Rotter's second count attempts to shoehorn several fraud-based claims into one—all based on the assurance that V&B could afford Rotter's compensation allegedly made at the June 21, 2021, meeting, or on Defendants' failure to later correct that assurance. (Doc. 1, #20–22). Under Pennsylvania law, fraudulent misrepresentation requires the plaintiff to prove six elements:

> (1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance.

*Alana Healthcare, LLC v. Cigna Corp. Servs., LLC*, No. 20-4628, 2021 WL 6063127, at *3 (E.D. Pa. Dec. 22, 2021) (quoting *Gregg v. Amirprise Fin., Inc.*, 245 A.3d 637, 645–46 (Pa. 2021)). Fraudulent concealment requires the same, except instead of a representation, there must be a material omission. *Id.* at *4 (citation omitted). "However, mere silence does not constitute concealment sufficient for a finding of fraud if there is no duty to speak." *Lemons v. Meguerian*, No. 21-1737, 2022 WL 1289128, at *4 (E.D. Pa. Apr. 29, 2022) (citing *Wilson v. Donegal Mut. Ins. Co.*, 598 A.2d 1310, 1316 (Pa. Super. Ct. 1991)). That also holds true as to a negligent omission. *Snider v. Wolfington Body Co., Inc.*, No. 16-02843, 2016 WL 6071359, at *10 (E.D. Pa. Oct. 17, 2016) (citations omitted).

Start with the misrepresentation claims. Rotter points to only *one representation* made by any Defendant: Grinberg and Mizrachi's assurance at the June 21, 2021, meeting that V&B had $60 million in available funds and so could afford his compensation. (Doc. 1, #20). But Rotter nowhere pleads facts suggesting that Grinberg or Mizrachi knew that statement was false at the time. To the contrary, he alleges that V&B learned about its financial problems *in August*, some two months later. (*Id.*). So he fails to adequately plead the basic knowledge element of fraud, let alone the more exacting requirements that Federal Civil Rule of Procedure 9(b) imposes. Nor does Rotter plead any facts sustaining a *negligent* misrepresentation claim—for example, facts suggesting how Defendants failed to reasonably investigate the facts behind their assurance. *See Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999) ("The elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words.").

Rotter's potential fraudulent or negligent concealment claims fare no better. Both claims are premised on Defendants failing to alert Rotter to the company's financial troubles once discovered. Aside from the fact that Rotter fails to plead when or if the movant-Defendants actually knew of the troubles, those claims require each of the Defendants to have some duty to disclose. So while he states that no V&B employees "remotely hinted that V&B was experiencing any financial distress at any time prior to October 27, 2021," that is not enough. (Doc. 1, #21). Rather, he needs to

point to facts suggesting some special relationship with one or more of the movant-Defendants that would create a duty as a matter of law. *See, e.g.*, *Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 725 (E.D. Pa. 2014) (holding that the plaintiffs were required to show that the defendants "had a fiduciary duty to disclose the fact" at issue); *Smith v. Renaut*, 564 A.2d 188, 192 (Pa. Super. Ct. 1989) ("Under Pennsylvania law, a seller has an affirmative duty to disclose a known termite infestation."). It is unclear what duty Rotter even thinks he was owed, let alone what the source of that duty may have been. So, the Complaint fails to state a claim against either Feathers or Mizrachi based on the alleged concealment of V&B's financial troubles.

Accordingly, because Rotter fails to state a claim as to any of the three movant-Defendants, the Court grants their respective motions to dismiss. (Docs. 7, 8, 40).[6]

## CONCLUSION

For those reasons, the Court **GRANTS** the Motions to Dismiss filed by Defendants Feathers, Walters, and Mizrachi (Docs. 7, 8, 40) and **DISMISSES** all claims against those Defendants. But because Rotter potentially could cure the above-identified defects through additional factual pleading, and because he requested an opportunity to replead, citing potential additional facts (*see*, *e.g.*, Doc. 12, #219–20), the Court dismisses the action **WITHOUT PREJUDICE**. *See Salazar v. Paramount*

---

[6] Because the Court is dismissing all claims against these three Defendants, it declines to weigh in on whether the Statute of Limitations has passed (as Defendants claim), or whether the Tolling Agreement entered into by the parties applies (as Rotter claims). (*See*, *e.g.*, Doc. 40-1, #394–97; Doc. 40-3, #404).

11

*Global*, 133 F.4th 642, 653 (6th Cir. 2025). Rotter shall have until April 7, 2026, in which to move for leave to file an Amended Complaint addressing the noted defects, if he can, and attaching the proposed Amended Complaint. The Court also **DENIES** as **MOOT** Plaintiff Rotter's Motion to File Documents Under Seal (Doc. 30).

      **SO ORDERED.**

March 11, 2026
_____
**DATE**

                                _____
                                  **DOUGLAS R. COLE**
                                  **UNITED STATES DISTRICT JUDGE**

12